UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTOPHER B.,

                          Plaintiff,

            v.

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

**DECISION AND ORDER**

1:21-CV-01238 EAW

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Christopher B. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his applications for child's disability insurance benefits and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 13; Dkt. 14), and Plaintiff's reply (Dkt 15). For the reasons discussed below, Plaintiff's motion (Dkt. 13) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion (Dkt. 14) is denied.

- 1 -

## BACKGROUND

Plaintiff protectively filed his applications for child's disability insurance benefits and SSI on February 14, 2018.  (Dkt. 9 at 20, 354-49. 360-62).[1]  In his applications, Plaintiff alleged disability beginning June 1, 2015.  (*Id.* at 20, 360).  Plaintiff's applications were initially denied on June 27, 2018.  (*Id.* at 20, 157-64, 165-70).  A telephonic hearing was held before administrative law judge ("ALJ") Mary Mattimore on March 8, 2021.  (*Id.* at 20, 54-94).  On March 26, 2021, the ALJ issued an unfavorable decision.  (*Id.* at 20-47).  Plaintiff requested Appeals Council review; his request was denied on September 29, 2021, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 6-10).  This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   Disability Determination

The Social Security Act provides for the payment of child's disability insurance benefits on a parent's earning record to a disabled adult child who is 18 years old or older and has a disability that began before attaining the age of 22.  *Doerr v. Colvin*, No. 13-CV-429 (JTC), 2014 WL 4057446, at *3 (W.D.N.Y. Aug. 14, 2014) (citing 20 C.F.R. § 404.350(a)(5)).  "In the context of determining eligibility for disabled adult child's benefits, the term 'disability' has substantially the same definition as it does in traditional, adult disability cases." *Hanlon v. Saul*, No. 18-CV-7090 (PKC), 2020 WL 999900, at *2 (E.D.N.Y. Mar. 2, 2020) (quotation and citation omitted).

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, the

claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. §§404.1520(d), 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. §§ 404.1509, 416.909), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. §§ 404.1520(f), 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. §§ 404.1520(g), 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative

substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. §§ 404.1560(c), 416.960(c).

## DISCUSSION

### I.   The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920.  At step one, the ALJ determined that Plaintiff had not attained the age of 22 or engaged in substantial gainful activity as of June 1, 2015, the alleged onset date.  (Dkt. 9 at 23; 20 C.F.R. §§ 404.102, 404.350(a)(5), 416.120(c)(4)).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: obesity; asthma; anxiety disorder; panic disorder; depressive disorder; social phobia; and chronic secondary to small fiber polyneuropathy.  (Dkt. 9 at 23).  The ALJ further found that Plaintiff's hypertension, GERD, IBS, internal hemorrhoids, gastritis, insomnia, obstructive sleep apnea, allergic rhinitis, scrotal lesions, retrolisthetis, bilateral hip bursitis, plantar warts, and pantrapezial arthritis, were non-severe.  (*Id.* at 23-24).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id.* at 24).  The ALJ particularly considered the criteria of Listings 12.04 and 12.06 and Plaintiff's obesity in reaching her conclusion.  (*Id.* at 24-29).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) but with the following limitations:

> [H]e can have no exposure to temperature and humidity extremes.  He can have no concentrated exposure to fumes, odors, dust, gases or other pulmonary irritants.  He can frequently finger, handle, and feel bilaterally. He can perform a low stress job defined as simple routine work and make simple workplace decisions not at production rate pace (assembly line pace). He can tolerate minimal changes in work place processes and settings.  He can tolerate occasional interaction with supervisors and coworkers but cannot perform tandem or teamwork.  He can have no interaction with the public.

(*Id.* at 29).

At step four, the ALJ found that Plaintiff had no past relevant work.  (*Id.* at 44).  The ALJ further relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of document preparer, addresser, and polisher eye glass frames.  (*Id.* at 44).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.* at 47).

## II.   <u>Remand of this Matter for Further Proceedings is Necessary</u>

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that the ALJ failed to adequately evaluate the mental health-related opinion evidence in formulating his RFC.  In response, the Commissioner argues that substantial evidence supports the ALJ's RFC and that the ALJ properly weighed the medical evidence before

her.  As further explained below, the Court agrees that remand for further proceedings is necessary.

### A.   <u>Evaluation of Medical Opinion Evidence</u>

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [her] decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted)).  In other words:

> An ALJ is prohibited from "playing doctor" in the sense that an ALJ may not substitute [her] own judgment for competent medical opinion.  This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quotation and citation omitted).

Relatedly, the ALJ may not "cherry pick" evidence. *Lee G. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1558(DJS), 2021 WL 22612, at *5 (N.D.N.Y. Jan. 4, 2021) ("Cherry picking refers to improperly crediting evidence that supports findings while ignoring conflicting evidence from the same source." (citation omitted)); *Starzynski v. Colvin*, No. 1:15-cv-00940(MAT), 2016 WL 6956404, at *3 (W.D.N.Y. Nov. 29, 2016) ("It is plainly improper for an ALJ to cherry-pick evidence that supports a finding of not-disabled while ignoring other evidence favorable to the disability claimant." (citing *Trumpower v. Colvin*, No. 6:13-

cv-6661 (MAT), 2015 WL 162991, at *16 (W.D.N.Y. Jan. 13, 2015))).  "Cherry picking can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both."  *Younes v. Colvin*, No. 1:14-CV-170(DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) (quotation and citation omitted).

The Commissioner's regulations relating to the evaluation of medical evidence were amended for disability claims filed after March 27, 2017.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01, at *5844 (Jan. 18, 2017).  Because Plaintiff's claims were filed on February 14, 2018, the new regulations, codified at 20 C.F.R. §§ 404.1520c and 416.920c, apply.

Pursuant to the new regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections.  *Id.*  Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  *Id.* at §§ 404.1520c(c), 416.920c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id.* at §§ 404.1520c(a), 416.920c(a). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(a)(1), 416.920c(c)(1). With respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id.* at §§ 404.1520c(b), 416.920c(b). "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec.,* No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted). Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical source's opinion. 20 C.F.R. §§ 404.920c(b)(2), 416.920c(b)(2). The ALJ may—but is not required to—explain how he considered the remaining factors. *Id.*

Although the applicable regulations state that an ALJ "will evaluate every medical opinion [he] receive[s,]" 20 C.F.R. §§ 404.1527(c), 416.927(c), "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits [the Court] to glean the rationale of an ALJ's decision[,]" *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013). "[F]ailure to discuss and/or weigh a medical opinion is not per se remandable error but may be found harmless error." *Sherry L. v. Comm'r of Soc. Sec.*, No. 20-CV-01432, 2022 WL 2180159, at *6 (W.D.N.Y. June 16, 2022) (collecting cases).

Finally, for mental health impairments—which are at issue in this case—the longitudinal record and opinions offered by treating providers are important, given that mental health impairments are "not susceptible to clear records such as x-rays or MRIs," and "depend almost exclusively on less discretely measurable factors, like what the patient says in consultations." *Flynn v. Comm'r of Soc. Sec.*, 729 F. App'x 119, 122 (2d Cir. 2018); *Cathy G. v. Kijakazi*, No. 1:21-CV-823 (ATB), 2022 WL 11134065, at *8 (N.D.N.Y. Oct. 19, 2022) ("The importance of the longitudinal record is paramount in cases involving psychiatric impairments" because "[m]ental health patients have good days and bad days; they may respond to different stressors that are not always active." (citing *Pagan v. Saul*, No. 18-CV-7012, 2020 WL 2793023, at *6 (S.D.N.Y. May 29, 2020))).

### B.   <u>Assessment of the Opinions of David McCalister, LCSW; Psychiatric Nurse Practitioner ("NP") Elizabeth Greis; and Christopher Frigon, LCSW</u>

Plaintiff argues that the ALJ improperly evaluated the opinions from LCSW McCalister, NP Greis, and LCSW Frigon, Plaintiff's mental health providers at Horizons Health Care, whose opinions supported a finding of disability. The Court will address each

provider's opinion and the ALJ's decision below.

### 1.    LCSW McCalister

Plaintiff began seeing LCSW McCalister on October 25, 2017, and the record contains treatment notes reflecting at least fifteen different visits with LCSW McCalister between that date and June 11, 2019.  (Dkt. 10 at 79-149, 174-200).  On April 12, 2018, LCSW McCalister completed a medical source statement.  (Dkt. 9 at 501-04).  In it, LCSW McCalister opined that Plaintiff is limited in understanding and memory due to panic and symptoms of depression, limited in sustaining concentration and pace because his anxiety and depressive symptoms impact functioning, limited in social interactions because he has difficulty managing his anxiety in social settings, and limited in adaptation because he finds change hard and his anxiety is often triggered by unknown sources.  (*Id.* at 502-03).  LCSW McCalister acknowledged his inability to provide a medical opinion regarding Plaintiff's ability to perform work-related activities.  (*Id.* at 504).

The ALJ assessed LCSW McCalister's opinion as follows:

> Though Mr. McCalister offers an opinion, albeit unexplained, that [Plaintiff] is "limited" in the "paragraph B" areas of functioning, his inability to offer an actual medical opinion about [Plaintiff's] ability to perform work-related activities renders his opinion unpersuasive because he did not support his findings with any explanation or citations to treatment notes.

(*Id.* at 37).

### .    2.    NP Greis

On June 16, 2020, NP Greis completed a Mental Impairment Questionnaire.  (Dkt. 10 at 258-63).  She noted that Plaintiff had been in therapy and medication management at Horizons Health Care "off and on since 2014" and that he had slight improvement with

counseling and medication at times, though his symptoms remained persistent. (*Id.* at 258). She noted that while Plaintiff demonstrated fair insight and judgment and an ability to maintain focus and attention during appointments, he was typically tired. As a result, she opined that he would not likely "be able to remain focused and on task during a typical work shift." (*Id.*). She wrote that "[d]epression, lack of energy/motivation and anxiety would likely be barriers to attending work and interacting with co-workers," but that his prognosis was fair. (*Id.*). She opined that Plaintiff was "unable to meet competitive standards" or had "no useful ability to function" in maintaining regular attendance, sustaining an ordinary routine, working in coordination with others, completing a normal workday and workweek without interruption from psychologically based symptoms, performing at a consistent pace, accepting instructions and responding appropriately to supervisors, getting along with co-workers, responding appropriately to changes in a routine work setting, and dealing with normal work stress. (*Id.* at 260). "Unable to meet competitive standards" was defined in the form to mean that the patient has noticeable difficulty (*e.g.*, distracted from job activity) from 16 to 25 percent of the workday or work week, and "no useful ability to function" is defined as an extreme limitation meaning that the patient cannot perform this activity on a regular, reliable, and sustained schedule in a regular work setting. (*Id.*). NP Greis wrote, "Chris's mental health symptoms related to diagnoses of persistent depressive disorder, social phobia panic disorder severely limit his ability to function in many areas that would be require[d] of a working individual." (*Id.*). She also noted that stress from work could increase his mental health symptoms and that his anxiety and social phobia "severely limits his ability to leave the house and interact

with public." (*Id.* at 261).   She opined that Plaintiff has moderate limitations in understanding and remembering information, marked limitations applying information and concentrating, and extreme limitations interacting with others, persisting, maintaining pace, adapting in the workplace, and managing oneself in the workplace. (*Id.* at 262).   She indicated that Plaintiff's mental disorder is "serious and persistent;" that he relies on ongoing medical treatment, mental health therapy, psychosocial support, or a highly structured setting to diminish the symptoms and signs of his mental disorder; and that he has only marginal adjustment or minimal capacity to adapt to changes in his environment or to demands not already part of daily life. (*Id.* at 262-63).   Finally, she noted that Plaintiff would be absent from work more than four days per month as a result of his impairments. (*Id.* at 263).

The ALJ found the opinion of NP Greis unpersuasive because:

> [W]hile Ms. Greis attempted to support her findings with explanations and references to her knowledge of the claimant's course of treatment, her own treatment notes do not reveal the level of limitations she proposes, nor do other treatment notes or the claimant's self-reported activities of daily living. Even when the claimant has had positive mental status findings, none of them has revealed limitations beyond those incorporated into the adopted residual functional capacity.   Rather, the opinion of [state agency reviewing psychiatric consultant] Dr. Lieber-Diaz is far more persuasive, as noted above.

(Dkt. 9 at 41).

### 3.   LCSW Frigon

Plaintiff began treatment with LCSW Frigon on December 17, 2019.   (Dkt. 10 at 205).   Plaintiff was treated by LCSW Frigon at least twenty times before the date of the hearing.   (*Id.* at 205-56, 265-374).   LCSW Frigon completed a Mental Impairment

- 13 -

Questionnaire on July 27, 2020.  (*Id.* at 265-71).  The questionnaire prepared by LCSW Frigon indicated that Plaintiff had attained some improvement with treatment and attends all appointments as scheduled.  He opined that Plaintiff's prognosis was fair/limited and noted that his symptoms included, among other things, depressed mood, difficulty concentrating or thinking, disproportionate fear or anxiety, frequent distractibility and difficulty sustaining attention, detachment from social relationships, and fatigue.  LCSW Frigon opined that Plaintiff is "unable to meet competitive standards" or had "no useful ability to function" in maintaining regular attendance, sustaining an ordinary routine without special supervision, making simple work-related decisions, completing a normal workday and workweek without interruption from psychologically based symptoms, performing at a consistent pace, asking simple questions or requesting assistance, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers or peers, responding appropriately to changes in a routine work setting, and dealing with normal work stress.  (*Id.* at 267).  LCSW Frigon wrote that Plaintiff's "[m]ental health symptoms severely limit ability to engage socially." (*Id.* at 268).  He opined that Plaintiff has none/mild limitation in understanding information; moderate limitations remembering information, concentrating, and persisting; and extreme limitations applying information, interacting with others, maintaining pace, adapting in the workplace, and managing oneself in the workplace.  (*Id.* at 270).  He stated that Plaintiff's mental disorder is "serious and persistent," that he relies on ongoing medical treatment, mental health therapy, psychosocial support, or a highly structured setting to diminish the symptoms and signs of his mental disorder, and that he has only marginal adjustment or

minimal capacity to adapt to changes in his environment or to demands not already part of daily life.  (*Id.* at 270-71).  Similar to NP Greis, LCSW Frigon opined that Plaintiff would be absent from work more than four days per month.  (*Id.* at 271).

> The ALJ described LCSW Frigon's opinion as follows:

> This opinion is also unpersuasive because, while Mr. Frigon attempted to support his findings with explanations and references to his knowledge of the claimant's course of treatment, his own treatment notes do not reveal the level of limitations he proposes, nor do other treatment notes or the claimant's self-reported activities of daily living.  Even when the claimant has had positive mental status findings, none of them have revealed limitations beyond those incorporated into the adopted residual functional capacity.  Rather, the opinion of Dr. Lieber-Diaz is far more persuasive, as noted above.

(Dkt. 9 at 41).

As set forth above, the ALJ found the opinions of LCSW McCalister, NP Greis, and LCSW Frigon unpersuasive on the basis that their treatment notes did not reflect the level of limitations proposed and/or because Plaintiff's reported activities of daily living conflicted with the opinions provided.  The Court agrees with Plaintiff that neither basis is adequately supported by substantial evidence.

For instance, the ALJ cites to several of these providers' benign treatment records that indicate Plaintiff having fair insight and judgment, euthymic mood, or some improvement with medication as support for not finding the opinions more persuasive, (*see, e.g.,* Dkt. 9 at 483, 489, 560, 574, 729; Dkt. 10 at 186, 190, 192), but the record is replete with entries spanning throughout his regular visits with these providers over the course of the relevant time period that consistently reflect Plaintiff's severe anxiety, panic attacks, depressed mood, difficulty interacting with others in person, negative thoughts,

and motivation issues.  In fact, contained within some of the same exact treatment records cited by the ALJ to support her conclusion that Plaintiff was stable or that therapy was helpful are notations indicating that: when Plaintiff's panic attacks become intense, he has difficulty (Dkt. 9 at 491); "at times his anxiety increases to the point where he [has] an anxiety attack," "energy and motivation is off and off," and "[s]ome days it is difficult for him to get out of bed," (*id.* at 497); several days within the last two weeks, Plaintiff reports feeling down, depressed, or hopeless (*id.* at 506, 529); Plaintiff "showers every two to three days and he dresses every other day" (*id.* at 574); Plaintiff had "observed restriction of smile" and "reports mood anxious/depressed" (Dkt. 10 at 214); Plaintiff's thoughts were "negativistic, mood mildly irritable" (*id.* at 285); Plaintiff's affect was tense, mood depressed, and he was anxious with thoughts negativistic and ruminative (*id.* at 290); and Plaintiff's medication helps "the anxiety a little bit, but not the depression" and that he was hesitant to increase the dose because the medication makes him very tired (Dkt. 10 at 303).

The Court concludes that by highlighting certain records that reflect stable findings without reconciling the majority of Plaintiff's records that consistently reflect his anxiety, depression, panic attacks, difficulty interacting with others, and decreased motivation, the ALJ engaged in impermissible cherry picking.  *See Ronald E. v. Kijakazi*, No. 20-CV-1869L, 2022 WL 6190240, at *3 (W.D.N.Y. Oct. 7, 2022) ("Initially, while the ALJ was correct that some of Dr. Bennett's examination findings were 'relatively normal,' the ALJ failed to acknowledge or reconcile those portions of plaintiff's treatment records which reflected abnormal findings, specifically in the areas of functioning where Dr. Bennett and Dr. Ippolito identified moderate-to-marked, or marked, impairments."); *Michael A. v.*

*Comm'r of Soc. Sec.*, No. 1:20-CV-538-LJV, 2022 WL 2669917, at *3 (W.D.N.Y. July 11, 2022) ("And while the ALJ was not required to explicitly analyze every piece of conflicting evidence in the record, she also could not pick and choose evidence in the record that supports [her] conclusions . . ., as she did here." (internal citations and quotations omitted)).

Moreover, the Second Circuit has instructed that cherry picking is particularly concerning, as here, in the context of mental health records, where an individual's mental status may vary over time. *See Colgan v. Kijakazi*, 22 F.4th 353, 362 (2d Cir. 2022) ("As this Court explained recently -- and powerfully -- in *Estrella v. Berryhill*, an ALJ commits legal error in resting his disability determination on a one-time snapshot of a claimant's status because that episode may not be indicative of her longitudinal mental health. Cycles of improvement and debilitating symptoms [of mental illness], we said, are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." (quoting *Estrella v. Berryhill*, 925 F.3d 90, 97-98 (2d Cir. 2019) with internal quotation marks and citations omitted)); *Ronald E.*, 2022 WL 6190240, at *4 ("By rejecting the opinions of the only two treating and examining mental health sources on the basis of their alleged inconsistency with selected psychiatric treatment records, without acknowledging the contradictory evidence in those treatment records which supported those opinions, or contacting either of those sources for clarification, I find that the ALJ improperly substituted her 'own expertise or view of the medical proof [in place of] any competent medical opinion.'" (quoting *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015))).

- 17 -

.      Here, the fact that the ALJ could cite to several records reflecting that Plaintiff was polite, cooperative, and appropriately groomed, had fair insight and judgment, and found some improvement from medication and therapy does not override or trump the longitudinal record of his mental health struggles or direct a conclusion that his provider's opinions were unsupported.  *Brianne S. v. Comm'r of Soc. Sec.*, No. 19-CV-1718-FPG, 2021 WL 856909, at *5 (W.D.N.Y. Mar. 8, 2021) (remanding and holding that where ALJ "merely state[d] that an examining physician's opinion is 'not consistent with[ ] the overall medical evidence,' . . . he has failed to adequately explain his conclusions regarding the consistency factor").  Nor can any error in assessing these opinions be deemed harmless because the opinions in question expressed Plaintiff's need for limitations greater than those contained in Plaintiff's RFC and had the opinions been credited, it could have altered the outcome of the ALJ's decision.  *Roman v. Saul*, No. 19-CV-3688 (JLC), 2020 WL 4917619, at *20 (S.D.N.Y. Aug. 21, 2020) (ALJ's assessment of medical opinion evidence not harmless error where had ALJ credited treating physician's opinion, it could have resulted in conclusion that claimant was disabled).

In addition, to the extent that the ALJ considered Plaintiff's "self-reported activities of daily living" to support her determination regarding the persuasiveness of the opinions of NP Greis and LCSW Frigon, the ALJ seems to have overstated the nature of Plaintiff's daily activities.  The activities identified by the ALJ are not particularly demanding or extensive, but instead consist of playing video games for up to six hours a day, watching television, drawing, carrying groceries, helping his mother as much as he can, performing his own personal care, and caring for his pet snakes.  Plaintiff does not drive or shop alone

and reported limited contact with anyone other than his mother, with nearly all of his interaction with other individuals solely occurring online.  To be sure, a plaintiff's activities of daily living are an important indicator of his or her level of functioning, *see* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i), but here, the activities identified do not appear inconsistent with Plaintiff's providers' opinions as to his limitations or serve to rebut any conclusion concerning his ability to engage in full time employment.  *See Colgan*, 22 F.4th at 363 ("Indeed, as we powerfully explained in *Balsamo*: '[W]hen a disabled person gamely chooses to endure pain in order to pursue important goals, such as attending church and helping his wife on occasion go shopping for their family, it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working." (quoting *Balsamo v. Chater*, 142 F.3d 75, 81-82 (2d Cir. 1998))); *Robert T. S. v. Comm'r of Soc. Sec.*, No. 5:21-CV-38 (CFH), 2022 WL 1746968, at *16 (N.D.N.Y. May 31, 2022) ("[T]he ALJ cannot justify his decision by relying on plaintiff's activities of daily living 'without taking account of the caveats and limitations [ ]he consistently asserted.'" (quoting *Kelly W. v. Kijakazi*, No. 3:20-CV-00948 (JCH), 2021 WL 4237190, at *11 (D. Conn. Sept. 17, 2021))); *Longley v. Saul*, No. 19-CV-6278L, 2020 WL 2507335, at *4 (W.D.N.Y. May 15, 2020) ("Furthermore, although a claimant's activities of daily living are properly considered by an ALJ as part of a holistic calculus in determining a claimant's abilities, . . . it is well-settled that [s]uch activities do not by themselves contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves." (quotations and citations omitted)); *Patrick M. v. Saul*, 3:18-CV-290 (ATB), 2019 WL 4071780, at *10

(N.D.N.Y. 2019) ("The Plaintiff's ability to attend medical appointments and engage in other daily activities of limited duration do not correlate to the Plaintiff's ability to stay on-task during an eight-hour work day or the likelihood that he would miss work several days per month because of exacerbation of his [impairments]").

Because the ALJ did not adequately explain how Plaintiff's reported activities of daily living contradict the opinions of his providers or would otherwise translate into an ability to perform employment, remand is similarly warranted on this basis. *Menashe F. v. Comm'r of Soc. Sec.*, No. 1:21-CV-06762-GRJ, 2022 WL 17730111, at *6 (S.D.N.Y. Dec. 16, 2022) ("In addition, the ALJ overstated the significance of Plaintiff's activities. Plaintiff's ability to play videogames at home and work part-time with the support of a job coach is not *ipso facto* inconsistent with Dr. Ritter's conclusion that Plaintiff would be unable to sustain concentration on non-preferred work tasks, maintain a full-time work schedule, and accept instructions and respond appropriately to criticism."); *Bigler v. Comm'r of Soc. Sec.*, No. 19-CV-03568 (AMD), 2020 WL 5819901, at *5 (E.D.N.Y. Sept. 29, 2020) ("[A] finding that a claimant is capable of undertaking basic activities of daily life cannot stand in for a determination of whether that person is capable of maintaining employment, at least where there is no evidence that the claimant 'engaged in any of these activities for sustained periods comparable to those required to hold a sedentary job.'" (quotation and citation omitted)); *Saunders v. Saul*, No. 19-CV-0270L, 2020 WL 4208250, at *4 (W.D.N.Y. July 22, 2020) ("Thus, where an ALJ concludes that a claimant's activities of daily living are inconsistent with a medical source's opinion, the ALJ is required to explain how the claimant's activities exceed the limitations described in the opinion.").

In sum, taking the present facts as a whole and in light of the issues identified above, the Court is unable to conclude that the ALJ's decision is supported by substantial evidence.  To be clear, the Court takes no position as to whether or not Plaintiff should ultimately be found to be under a disability.  It is for the ALJ to determine on remand.  *See Newman v. Berryhill*, No. 16 CIV. 9325 (AJP), 2017 WL 4466615, at *19 (S.D.N.Y. Oct. 6, 2017) (noting that "[o]n remand, the ALJ should consider the trends reflected in [Plaintiff's] more recent treatment records and should avoid "cherry-pick[ing] evidence in support of his own conclusions").  The Court is simply concluding that the ALJ's factual findings were not supported by substantial evidence, as is required, warranting remand.  *See Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022) ("Courts frequently remand an ALJ's decision when it ignores or mischaracterizes medical evidence or cherry-picks evidence that supports his RFC determination while ignoring other evidence to the contrary.").  Accordingly, because the Court finds error in the ALJ's assessment of medical opinion evidence and that the error cannot be considered harmless, remand is appropriate.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 13) is granted to the extent that the matter is remanded for further administrative proceedings.  Defendant's motion for judgment on the pleadings (Dkt. 14) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: January 5, 2023
      Rochester, New York